NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. REDDY'S LABORATORIES LIMITED, et al., | |
| Plaintiffs, | Civ. No. 09-2398 |
| v. | OPINION |
| NORDION, INC., formerly known as MDS, INC., et al., | |
| Defendants. | |

THOMPSON, U.S.D.J.

      This matter has come before the Court on a Motion for Reconsideration [docket # 55] brought by Plaintiffs, Dr. Reddy's Laboratories Ltd., Dr. Reddy's Laboratories, Inc., and Reddy Pharmaceuticals, Inc. (collectively, "Plaintiffs" or "Dr. Reddy's").  Plaintiffs seek reconsideration of the Court's Memorandum Order of March 27, 2012 ("the Memorandum Order") [50], in which the Court affirmed the Letter Order of February 10, 2012 ("the Letter Order") [41] issued by Magistrate Judge Lois H. Goodman.  In that initial Letter Order, Judge Goodman denied Plaintiffs' request for a protective order.  This Court affirmed that decision. Defendants Nordion, Inc., formerly known as MDS, Inc., MDS Pharma Services (US), Inc., and MDS Pharma Services (Canada), Inc. (collectively, "Defendants" or "MDS") oppose Dr. Reddy's motion [45].  The Court has reached a determination without oral argument after considering all of the submissions of the parties, including that of amici curiae Association of Corporate Counsel and Association of Corporate Counsel – New Jersey Chapter.  For the following reasons, the Plaintiffs' motion is denied.

## I.      BACKGROUND

The parties here dispute whether a portion of an email sent by one of Dr. Reddy's employees, M.S. Mohan, is protected under New Jersey's statutorily-based attorney-client privilege.  The particular portion of the email that Plaintiffs attempt to make subject to a protective order is one paragraph that consists of only two sentences.  As explained in this Court's Memorandum Order, on its face, the first sentence of this paragraph is a declarative statement by M.S. Mohan concerning the remedies available under a particular agreement.  The second sentence questions whether "may be [*sic*]" Dr. Reddy's should have their outside counsel in the State of New Jersey reexamine the agreement.

Judge Goodman held in the Letter Order that the disputed portion of Mohan's email is not privileged as an attorney-client communication.  *See* (Letter Order of Feb. 10, 2012, at 3–4). Relying on the United States Court of Appeals for the Third Circuit's decision in *In re Grand Jury Investigation (Sun Co.)*, 599 F.2d 1224 (3d Cir. 1979), Judge Goodman reasoned that only a direct communication with an attorney was subject to the privilege; mere discussion about the possibility of seeking legal advice was not protected.  *See* (Letter Order of Feb. 10, 2012, at 3–4). In affirming Judge Goodman's Letter Order, the Court also held that under New Jersey law the only communications subject to the attorney-client privilege are those occurring between a lawyer and his or her client.  *See* (Mem. Order of Mar. 27, 2012).  Although there are certain limited exceptions to this general rule, none are applicable in this case.  *See* (*id.*).

## II.      STANDARD OF REVIEW

Reconsideration is an extraordinary remedy that is to be granted "very sparingly." *Interfaith Cmty. Org. v. Honeywell Intern., Inc.*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002). Pursuant to Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1, a motion for reconsideration may be based on one of three separate grounds: (1) an intervening change in

controlling law; (2) new evidence not previously available; or (3) to correct a clear error of law or to prevent manifest injustice. *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).

A motion for reconsideration is not an opportunity to raise new matters or arguments that could have been raised before the original decision was made. *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001). Nor is a motion for reconsideration an opportunity to ask the Court to rethink what it has already thought through. *Oritani S & L v. Fidelity & Deposit*, 744 F. Supp. 1311, 1314 (D.N.J. 1990). Thus, a motion for reconsideration may be granted only if there is a dispositive factual or legal matter that was presented but not considered that would have reasonably resulted in a different conclusion by the court. *Champion Labs., Inc. v. Metex Corp.*, 677 F. Supp. 2d 748, 750 (D.N.J. 2010).

## III.   ANALYSIS

Because Plaintiffs' claims against Defendants are based on state law, the question of privilege in this case is governed by the law of the State of New Jersey. *See* Fed. R. Evid. 501. The attorney-client privilege in the state of New Jersey is controlled by New Jersey Rule of Evidence 504 and N.J.S.A. 2A:84A-20. *See also Tractenberg v. Twp. of West Orange*, 4 A.3d 585, 598 (N.J. Super. Ct. App. Div. 2010). Dr. Reddy's argues that the Court committed clear error by: (1) failing to consider or improperly applying Rule 504(3); (2) by "overlooking" the evidence presented by Plaintiffs concerning Plaintiffs' corporate practices; and (3) by requiring that the entire communication, as opposed to smaller sub-portions of the communications, be made with the dominant purpose of seeking legal advice. After considering Dr. Reddy's arguments, however, the Court does not believe that it committed a clear error in its previous ruling.

### a. **"Communications Between Lawyer and his Client"**

Dr. Reddy's first argues that the Court committed clear error in holding that the attorney-client privilege applies only to those communications between a lawyer and his or her client. As always, the Court's interpretation of a statute starts with the statutory text. *See BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91(2006) (citing *Cent. Bank of Denver, N. A. v. First Interstate Bank of Denver, N. A.*, 511 U.S. 164, 173 (1994)). New Jersey Rule of Evidence 504, which quotes N.J.S.A. 2A:84A-20 in its entirety, provides in relevant part:

> (1) Subject to [N.J. Evid. Rule 530] and except as otherwise provided by paragraph 2 of this rule **communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged**, and a client has a privilege . . . (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (i) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness. . . .
>
> (3) As used in this rule (a) **"client" means a person or corporation or other association <u>that</u>, directly or through an authorized representative, consults a lawyer** or the lawyer's representative for the purpose of retaining the lawyer or securing legal service or advice from him in his professional capacity; and includes an incompetent whose guardian so consults the lawyer or the lawyer's representative in behalf of the incompetent, (b) "lawyer" means a person authorized, or reasonably believed by the client to be authorized to practice law in any State or nation the law of which recognizes a privilege against disclosure of confidential **communications between client and lawyer**. A communication made in the course of a relationship between lawyer and client shall be presumed to have been made in professional confidence unless knowingly made within the hearing of some person whose presence nullified the privilege.

N.J. R. Evid. 504; N.J.S.A. 2A:84A-20 (emphasis added). Dr. Reddy's argues that the Court committed clear error in misconstruing the effect of subsection (3).

As the Court stated in its earlier Memorandum Order, Rule 504(1) recognizes as privileged those "communications between a lawyer and his client in the course of that relationship . . . ." N.J.R. Evid. 504(1). A plain reading of this statute thus confirms that this

privilege is narrow, and it applies only to communications between a "client" and a "lawyer."  In the words of the Superior Court of New Jersey, Appellate Division: "This privilege extends only to confidential communications between an attorney and client."  *Gannett N.J. Partners, LP v. Cnty. of Middlesex*, 877 A.2d 330, 339 (N.J. Super. Ct. App. Div. 2005) (citations omitted). Several other portions of the statutory text support this interpretation.

Contrary to Plaintiffs' assertion, the Court previously took into consideration the definitions provided in Rule 504(3).  Indeed, the Court recognized that these definitions, far from helping Plaintiffs, actually cut against Plaintiffs' position.  *See* (Mem. Order of Mar. 27, 2012 at 5 n.2).  To begin, because subsection (3) provides definitions that are applicable to subsection (1), the definition of "client" cannot be read without reference to the direct communication between client and lawyer necessary to fall within the purview of the attorney-client privilege in the State of New Jersey.  Even reading the definition of "client" in isolation, however, the Court cannot agree with Dr. Reddy's contentions.  Subsection (3) recognizes that a "client" includes only those "corporation[s] . . . that, directly or through an authorized representative, <u>consult[] a lawyer</u> . . . ."  N.J.R. Evid. 504(3) (emphasis added).

Likewise, at least one other provision in the statutory text frames the attorney-client privilege in New Jersey as applying only to direct attorney-client communications.  Under the statute, a client may prevent a third-party witness from disclosing a communication subject to the attorney-client privilege when that witness obtained knowledge of that communication "in the course of <u>its transmittal between the client and the lawyer</u>."  N.J.R. Evid. 504(1)(c)(i).  This is just one more example of the statute describing the attorney-client privilege in terms of direct communication between a "client" and a "lawyer."

The Court's common sense holding that the attorney-client privilege applies only to direct communication between a lawyer and his or her client was not a clear error of law.

b. **"Necessary" Intermediary Exception**

In its Memorandum Order, the Court also recognized that the New Jersey state courts have carved out a judicially-made exception to the general requirement that only direct communications between a client and a lawyer are subject to the attorney-client privilege.  *See* (Mem. Order of Mar. 27, 2012).  This exception provides that the privilege will also "extend[] to 'the *necessary* intermediaries and agents through whom the communications are made." *Tractenberg*, 4 A.3d at 598 (citing *State v. Kociolek*, 129 A.2d 417 (1957)) (emphasis added).  In analyzing whether Plaintiffs fell into this limited exception, the Court concluded that "Plaintiffs have not presented any evidence that the receiving parties of the email in this case were necessary to facilitate communication to or from an attorney."  (Mem. Order of Mar. 27, 2012 at 5).  Plaintiffs argue that "[t]he Court's clear legal error was in requiring '*necessity*' for a party's 'agent'—as opposed to a third-party 'intermediary'—who is the client's 'authorized representative' to communicate with counsel for purpose of obtaining legal advice."  (Pls.' Br. at 3 (emphasis in original)).  The Court's conclusion, however, was not a clear error of law.

Although not explicitly stating this, Dr. Reddy's attempts to frame subsection (3) as a stand-alone provision providing a separate, statutorily-based exception to the requirement of direct communication provided by subsection (1).[1]  But, as explained above, this provision cannot be read without reference to the requirement of direct communication.  The "authorized representative" of a corporation is any employee that communicates with an attorney seeking legal advice on behalf of the corporation.  As another court in this district has explained, "[s]ince

---

[1] Following M.S. Mohan's communication to seven other non-attorney employees, one of those employees, Kumara Sekar, forwarded this email to Dr. Reddy's attorney.  (M.S. Cert. Ex. B) [42-6].  Dr. Reddy's argues that "[u]nder Rule 504(3) the client has chosen to communicate with counsel through an 'authorized representative' and the communication is privileged since they are all 'the client' for purposes of Rule 504(3)."  (Pls.' Reply Br. at 2).  In this case, Mr. Sekar is the "authorized representative," but the relevant communication was not from this "authorized representative" to the corporation's attorney.  Nobody doubts that Mr. Sekar's email is privileged, but that is not the question.  The question is whether the prior communication from M.S. Mohan to Sekar is privileged.  Plaintiffs attempt to blur the line demarcating both separate employees and separate communications beyond the point of recognition.

a corporation must act through its agents, *communications between an attorney and the corporation's employees*, including lower level employees, will be afforded the protections of the privilege where doing so would give effect to the purposes of the privilege." *Leonen v. Johns-Manville*, 135 F.R.D. 94, 98 (D.N.J. 1990) (citation omitted) (emphasis added).

Under Plaintiffs' interpretation of this statute, the privilege extends not only to communications made by the authorized corporate representative (i.e., any corporate employee communicating with the attorney on the corporation's behalf) to the attorney and vice-versa, but it would also extend to *all* intra-corporate communications to the authorized corporate representative. This, however, would contort the privilege beyond recognition within the corporate context. New Jersey courts have never protected internal client communications leading up an actual lawyer-client communication without some heightened showing that the internal communication was either necessary to pursue legal advice or made at the request of an attorney. For example, in an analogous situation, the New Jersey Superior Court, Appellate Division, recently held that a client's handwritten summary of events—which she prepared because she intended to show this to her future attorney and in fact did show to her future attorney—was not protected by the attorney-client privilege because it was not prepared at the attorney's request or for the purposes of preparing for litigation. *See Marshall v. JPMorgan Chase Bank, N.A.*, No. A-1405-11T3, 2012 N.J. Super. Unpub. LEXIS 808, at *6–12 (N.J. Super. Ct. App. Div. Apr. 12, 2012). This preceding communication (i.e., writing herself a note summarizing the relevant events) that occurred prior to the actual lawyer-client communication was not protected from disclosure.

Any rule not requiring that intra-corporate communications be "necessary" in order to be protected in this context would make the scope of the attorney-client privilege unwieldy. For example, a company-wide email that questions whether "maybe" the company should seek legal

advice would fall within Plaintiffs' broad interpretation of the statute, even if this email was sent to hundreds of employees that in no way deal with the issues underlying the need for legal advice. As another example, without a "necessity" requirement, simply forwarding an email to an attorney would raise the possibility of retroactively making a communication subject to the privilege. Courts in New Jersey have already rejected applying the attorney-client privilege in this manner. *See Tractenberg*, 4 A.3d at 599. While Plaintiffs argue that the Court misconstrued its position in its earlier briefing because Plaintiffs "never contended that 'forwarding the email to an attorney retroactively made the communication subject to the privilege,'" (Pls.' Br. at 8), this is in actuality exactly the position that Plaintiffs argue.[2] At the very least, this is the practical consequence of the position that Dr. Reddy's espouses. Such a construction of the attorney-client privilege would cause it to become un-tethered from the realistic need to seek confidential legal advice.

The unique problems posed by the realities of corporate life in the area of attorney-client privilege have been recognized by many courts, and these problems are not lost on this Court either. Requiring that an intra-corporate communication be necessary to obtain legal advice, however, is faithful to the principle that a litigation privilege should be given only as broad of a scope as its rationale requires. *See, e.g.*, *Robertson v. Cent. Jersey Bank & Trust Co.*, 834 F. Supp. 705, 708 (collecting cases) ("[T]he attorney-client privilege is not absolute and it is to be strictly limited to the purposes for which it exists."). This is because the attorney-client privilege "runs counter to the fundamental theory of our judicial system that the fullest disclosure of facts will best lead to the truth and ultimately to the triumph of justice." *Metalsalts Corp. v. Weiss*, 184 A.2d 435, 439 (N.J. Super. Ct. Ch. Div. 1962) (internal quotations and citations omitted). Here, "[t]he privilege accords the shield of secrecy only with respect to confidential

---

[2] *See* note 1, *supra*.

communications made within the context of *the strict relation* of attorney and client." *United Jersey Bank v. Wolosoff*, 483 A.2d 821, 826 (N.J. Super Ct. App. Div. 1984) (emphasis added); *see also Metalsalts Corp.*, 184 A.2d at 488–89.

Plaintiffs argue that "[n]ecessity is a relative concept, and requiring *absolute* necessity ignores reality and practical considerations." (Pls.' Br. at 7 (emphasis in original)). Generally speaking, the Court is in agreement with this point of view, especially in the corporate context. *See Payton v. N.J. Tpk. Auth.*, 691 A.2d 321, 328 (N.J. 1997) ("[O]ur desire to attain truth through the adversarial process has led to a disfavoring of such a categorical approach to concerns about confidentiality in favor of case-by-case balancing."). But, because there is no evidence on this issue before the Court, as discussed *infra*, the level of showing required to satisfy this burden need not—and will not—be addressed by the Court. Likewise, the Court will not attempt to supply an exhaustive list of the theories that might be used to show "necessity" of communication in the corporate context. One theory, however, that the Court believes a litigant may use to satisfy the required "necessity" in the corporate context would be to show that only certain employees had authority to seek legal advice by outside counsel—e.g., when requests for legal advice have to be funneled through specific employees. The parade of horribles feared by amici in requiring a direct attorney-client communication for the privilege to apply is unfounded.

Next, Dr. Reddy's argues that the Court "overlooked" the supplemental certification of M.S. Mohan that was submitted to the Court for the first time on appeal of Judge Goodman's Letter Order. As the Court explained in a footnote, however, when reviewing a magistrate judge's order, "a district court may not consider evidence which was not presented to the magistrate judge. Therefore, the supplemental certification submitted by M.S Mohan at docket entry 43 will not be considered by the Court." (Mem. Order of Mar. 27, 2012 at 3, n.1 (internal citations and quotations omitted)). Plaintiffs argue that this matter was initially resolved through

letter briefing from counsel and that no notice of motion was ever filed.  This should, according to the Plaintiffs, permit the Court to consider facts beyond the letter submissions.  Plaintiffs, however, admitted in their second letter to Judge Goodman that the initial two certifications provided by Plaintiffs "establish[] the factual basis for their claim of privilege."  (Letter of Jan. 30, 2012).[3]  The Court is not persuaded that its original decision to not consider the supplemental certification was a clear error or would otherwise create a "manifest injustice."

### c.   "Dominant Purpose"

New Jersey courts have consistently held that only those communications made with the "dominant purpose" of seeking legal advice fall within the attorney-client privilege.  *See, e.g.*, *State v. Pavin*, 494 A.2d 834 (N.J. Super. Ct. App. Div.1985).  Even though no new facts that were previously unavailable were presented to the Court, the Court has nevertheless reviewed the email for a second time and it continues to believe that neither the email as a whole, nor the smaller sub-portion of the email that Plaintiffs seek to redact, was drafted with the dominant purpose of seeking legal advice.

The only evidence that would indicate such an intent is the first certification submitted by M.S. Mohan in which he attempts to contort his affirmative statement into a question by arguing that he "mistakenly" used the conjunction "its" instead of the two-word phrase "is it," and again "mistakenly" used a period at the end of the sentence as opposed to a question mark.  (Mohan Cert. ¶¶ 9–12) [39-1].  Such self-serving statements, especially when it concerns a party's state of mind, need not be accepted as fact when the surrounding circumstances, as here, indicate a contrary intent.  *Cf. Conoco Inc. v. United States Dep't of Justice*, 687 F.2d 724, 728 (3d Cir. 1982) (self-serving affidavit does not suffice to invoke the attorney work-product privilege when

---

[3] The fact that the supplemental certification was prepared by M.S. Mohan only after he came to the United States is also of no import.  One of the initial certifications was also prepared by M.S. Mohan, and the initial certification was nearly twice as long as the second certification.  To somehow imply that being overseas prevented M.S. Mohan from supplying an additional three pages of facts, when he had already prepared six, is disingenuous at best.

plaintiff seeks documents under freedom of information act request); *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 719 (3d Cir. 2004) (finding in the context of a motion for preliminary injunction that "[d]istrict courts must exercise their discretion in weighing all the attendant factors . . . to assess whether, and to what extent, affidavits or other hearsay materials are appropriate given the character and objectives of the . . . proceeding," and that "[t]he weight to which such materials are entitled may of course vary greatly depending on the facts and circumstances of a given case"); *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citation omitted) (internal quotation marks omitted) ("conclusory, self-serving affidavits" are insufficient to create a material issue of fact so as to survive a motion for summary judgment).

## IV.   CONCLUSION

For the reasons stated above, the Memorandum Order issued by the Court on March 27, 2012 was not clearly erroneous or contrary to law.  Consequently, Plaintiffs' motion for reconsideration will be denied.  An appropriate Order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: 5/9/2012

11